IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ERVIN and ANGIE WARD,

        Plaintiffs,

v.                                  No. CIV 05-198 JH/LFG

TEREX-TELELECT, a corporation, and
SIMON-TELELECT, a corporation,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiffs' Motion to Determine the Sufficiency of Defendants' Objections and Responses to Plaintiffs' First Requests for Admissions, filed February 12, 2007.  [Doc. 81.]  On March 5, 2007, Defendants Terex-Telelect and Simon-Telelect ("Defendants") files opposition to the motion.  Plaintiffs' Motion is fully briefed and ready for resolution, without the need for oral argument.  [Doc. Nos. 83, 88.]

**Background**

The following background of this case is taken from the pleadings and the parties' joint status report, filed September 15, 2006.  [Doc. 64.]  The deadline for discovery in this case was extended until January 12, 2007.  [Doc. 76.]  A jury trial is scheduled for June 18, 2007.  [Doc. 69.]

This is a complex product liability and negligence case involving the Hi-Ranger 57 OM overcenter material handling aerial device, and specifically the Hi-Ranger, bearing Simon-Telelect

manufacturer's serial number 57 OM-1665-BDD.  Plaintiffs contend that the aerial device at issue was defectively designed, manufactured and marketed by Defendants.  Plaintiffs specifically assert, *inter alia*, that the operator hand controls in the bucket of the aerial device should have been constructed of, or covered with, plastic or some other non-conductive material, that the boom and bucket have a propensity to suffer from "hydraulic drift", that the hydraulic system in the aerial device was defective, that the covering on the underside of the boom should have been equipped with non-conductive material and that Defendants failed to adequately warn about the risk of "hydraulic drift."  Plaintiffs also seek punitive damages.  Defendants deny all of these allegations.  [Doc. 64.]

Significant discovery has taken place in this case.  Thousands of pages of documents have been exchanged.  Multiple expert witnesses have been retained and identified.  The parties have both taken a number of depositions and have required several extensions of deadlines.  [Doc. 64.]

## Discussion

### A.     Rule 36 Requests for Admissions ("RFA's")

Federal Rule of Civil Procedure 36 permits parties to serve upon other parties "a written request for the admission . . . of the truth of any matters within the scope of Rule 26(b)(1) . . . that relate to statements or opinions of fact or of the application of law to fact, . . . ."  Fed. R. Civ. P. 36(a).  "Each matter of which an admission is requested shall be separately set forth."  Fed. R. Civ. P. 36(a).  A responding party may answer or object to a request for admission.  "If objection is made, the reasons therefor shall be stated.  The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter."  Fed. R. Civ. P. 36(a).  If "good faith" requires the responding party to qualify an answer or deny only a part of the

matter of the admission, the party shall specify so much of it as is true and qualify or deny the remainder.

A denial of a request for an admission must specifically address the substance of the request but also may be as simple as the single word, "denied."  The answer may not be evasive or sidestep the request.  If a party is unable to admit or deny the request, the party can so state but must describe in detail, after reasonable inquiry, why it cannot admit or deny the request.  Typical grounds for objections to requests for admission include privilege, vague or ambiguous, and outside the scope of discovery.  Baicker-McKee, Janssen & Corr, Federal Rules Civil Handbook, 2006, Fed. R. Civ. P. 36, pp. 727-28 (citations omitted).

The requesting party may move to determine the sufficiency of the answers or objections.  "Unless the court determines that an objection is justified, it shall order that an answer be served.  If the court determines that an answer does not comply with the requirements of this rule, it may order either that the matter is admitted or that an amended answer be served."  Fed. R. Civ. P. 36(a).  The question of sufficiency refers to the specificity of the response, not whether the response is correct or in made in good faith.  The burden is on the objecting party, who must show that the objection was proper.  Baicker-McKee, Janssen & Corr, Federal Rules Civil Handbook, 2006, Fed. R. Civ. P. 36, pp. 729 (citations omitted).

The party losing a motion to determine the sufficiency of a response pays the other party's expenses, including a reasonable attorney's fee, incurred in filing the motion. See Epling v. UCB Films, Inc., 2000 WL 1466216 (D. Kan. Aug. 7, 2000).  A court may sanction a party for an insufficient answer or improper objection by deeming the response to be an admission.

B.    **Plaintiffs' Motion**

Plaintiffs' motion concerns many of the 110 RFA's, with multiple subparts, served on Defendants.  [Doc. 81, Ex. 1.]  Plaintiffs argue generally that Defendants' objections consisting of "vague and ambiguous" and/or "overlay broad" are insufficient and should be overruled.  Plaintiffs assert that broad objections such as these, without more specificity, should be overruled.  They ask that any RFA not specifically answered should be deemed admitted, or, alternatively that Defendants be required to provide supplemental answers.  Plaintiffs further note that in many instances where Defendants have provided allegedly insufficiently specific objections, they have proceeded to admit or deny the statement conditioned on the objections.  Plaintiffs ask that the objections in those cases be overruled and that the answer stand as an "unequivocal response."

Defendants' assert that many of the RFA's were vague, ambiguous and/or overly broad, in contrast to the requirement that RFA's be limited to singular relevant facts.  Defendants further argue that they are not required to admit or deny an RFA if the statement is vague or ambiguous.  Defendants explain that they did not object to the substance of the RFA's; rather, they properly objected to the form of the RFA's.  Thus, they claim their responses or objections are sufficient and should be sustained.

C.    **Requests for Admission**

Plaintiffs take issue with many of Defendants' objections/responses to the 110 RFA's and subparts.  As best as the Court can determine, Plaintiffs object to the Defendants' responses to the following RFA's:  3(a-d), 4, 5, 6, 7, 8 (d-g), 9, 10, 11, 12, 13(a, b), 15, 16, 17, 19(a, c-e, f, g-h), 20 (a-c), 22, 23, 24, 25, 27, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52-56, 59, 60, 65-68, 70 (a-i), 71 (b-h, j, l-m, p-u), 73 (c, f, n, x-cc, kk), 76 (b, c i-iv), 97, 98,

99, 107 (a-s), 108 (a, b), 109 (a, b).  Defendants group the challenged responses in a slightly different way.  The Court attempts to address them in numerical order, but notes that neither party made it easy for the Court to distinguish which RFA's are still in dispute as of the time the reply was filed. In addition, the briefing of these discovery disputes made it particularly difficult for the Court to identify each and every RFA in dispute and the arguments in support or in contravention, as the parties' arguments are spread throughout the briefing, sometimes in no particular order.

**RFA Nos. 1-7**

This set of RFA's relates to questions about a "Hierarchy of Safety Engineering Controls". Some of these RFA's ask whether "under the Hierarchy of Safety Engineering Controls" ("Hierarchy"), a manufacturer of a product "should and must conduct" a hazard analysis and a risk assessment of a product before placing it on the market.  Others ask about the "order of precedence" required by the Hierarchy.  Still other RFA's ask if the Hierarchy is "universal and applies to any product placed in the market."  Several RFA's ask if the Hierarchy applied to the product, component parts, operating systems, and manufacturer in question.

Defendants objected to RFA Nos. 1-7 on that grounds that the terms "Hierarchy of Safety Engineering Controls," "hazard analysis," "risk assessment" were "vague and ambiguous."  In some responses, Defendants wrote only "vague and ambiguous."  In all 7 responses, Defendants stated that subject to these objections the RFA's were denied.

Defendants refer, in part, to a page of Mr. James Olson's deposition to show that Mr. Olson testified there were a lot of different terms for safety controls.  [Doc. 83, p. 5.]  Yet, Defendants did not supply this page or pages of Mr. Olson's deposition transcript, nor does Exhibit 3 (portions of Mr. Olson's deposition), attached to Plaintiffs' motion, contain the referenced page 98 of Olson's

deposition.  Moreover, the Court concludes that the boilerplate objections "vague and ambiguous", under these circumstances, lack sufficient specificity, and therefore, are overruled.  The Court deems Defendants to have unequivocally denied RFA Nos. 1-7, including all subparts.

### RFA No. 8 (d-g)

RFA 8 states: The Hi-Ranger 57 OM-1665-BDD that is the subject of this action was purchased by the City of Farmington from Commercial Body Corporation in 1996.  Subpart "d" states that it was sold by Commercial Body Corporation to the City of Farmington pursuant to bid No. 96-44.  Subpart "e" states that it is City of Farmington Unit No. 9254.  Subpart "f" states that the requisition for the 57 OM-1665-BDD was issued by the City of Farmington on September 18, 1995.  Subpart "g" states that the (pertinent) City of Farmington Purchase Order was No. 143285, issued on May 8, 1996.  Defendants provided the same response to all four subparts: that it made reasonable inquiry and lacks sufficient knowledge to admit or deny.

Defendants further explain in their opposition to Plaintiffs' motion that their information regarding these requests is derived from the same document Plaintiffs have, which states the records at issue were destroyed in accordance with the City of Farmington's document retention policy.  Rule 36(a) specifically provides that an answering party may not give lack of information as a reason for failure to admit or deny a request unless the party states it has made reasonable inquiry.  This Defendants did.  The objections/responses to RFA 8(d-g) are sustained.

### RFA Nos. 9-17

These RFA's generally address corporate and subsidiary relationships, purchases, mergers, or acquisitions of Simon-Telelect, Inc., Telelect, Inc., Hi-Ranger, Inc., Simon Access division of Simon Engineering, Commercial Body Corporation, Combatel, Terex-Telelect and Terex-Utilities.

RFA 9 states: Simon-Telelect, Inc. purchased Telelect, Inc. in 1988. Defendants responded: "vague and ambiguous," explaining in its opposition brief that while Simon-Telelect, Inc. purchased the Telelect, Inc. product line the request could be interpreted to mean a purchase of more than those assets. The Court finds that the term "purchase" has a generally understood meaning, and therefore, overrules the objection. Defendants are required to provide an amended answer.

RFA 10 states that Hi-Ranger, Inc. purchased the Mobile Aerial Towers product line. Defendants objected: "Overly broad, vague and ambiguous." They further explained in their brief that neither entity is a party to this action but that Mobile Aerial Towers did sell assets used in manufacturing aerial devices to a company named Hi-Ranger. Defendants were uncertain about the specific "product line" referenced in RFA 10. The Court overrules the objection and requires an amended answer. The rules state that if a party answers that it does not have sufficient information to admit or deny, it must state that it made a reasonable inquiry. Defendants' initial objection is not sufficiently specific. Its second response does not say anything about having made a reasonable inquiry.

RFA 11 states that "When Simon-Telelect, Inc. purchased the Hi-Ranger, Inc. product line, it also acquired the design related assets of Hi-Ranger, Inc., including drawings, schematics, and specifications for the Hi-Ranger product lines. Defendants objected that the term "design related assets" was vague and ambiguous. In the opposition brief, Defendants noted that Plaintiffs had failed to refer to Mr. Olson's deposition transcript at page 50 where testimony was elicited tending to show the term was unclear. Yet, once again, Defendants did not identify to the Court where to find page 50 of Mr. Olson's deposition, nor did Plaintiffs attach that page to exhibit 3. The Court overrules

the objections and requires an amended answer. Plaintiffs defined the phrase with sufficient specificity, by noting the inclusion of drawings, etc.

RFA 12 states that Terex Corporation acquired the Simon Access division of Simon Engineering in 1997. Defendants objected: "vague and ambiguous" and then admitted the request conditioned on its objection. The objection lacks specificity. The Court sees no further explanation regarding this RFA in Defendants' opposition brief. The Court overrules the objection and deems the request unequivocally admitted.

RFA 13(a) states that when Terex-Telelect, Inc. purchased Simon-Telelect, Inc., it acquired the design related assets for the products being manufactured by Simon-Telelect, Inc. Defendants objected that the term "design related assets" was vague and ambiguous, and denied the request subject to those objections. RFA 13(b) is similar in that it refers to a transfer of the design related assets from Simon-Telelect, Inc. to Terex-Telelect, Inc. Defendants made the same objection and conditional denial. Based on the earlier definition of "design related assets" (in relation to Hi-Ranger) and the Court's discussion *supra*, the Court concludes these requests were sufficiently specific for Defendants to have admitted or denied them. Thus, Defendants' answers are deemed unequivocal denials.

RFA Nos. 15, 16, and 17 provide that Terex-Telelect, Inc. merged with Terex-Utilities in 2002; Terex-Telelect, Inc. became a subsidiary of Terex-Utilities in 2002; and Terex Corp. owns Terex-Utilities. Defendants denied all three RFA's conditioned on the objection of "vague and ambiguous." In the opposition brief, Defendants state that it was unclear whether Plaintiffs were referring to an entity Terex is not aware of or whether Plaintiffs were referring to Terex Utilities, Inc. Defendants then provide more specific answers to these three requests. The Court finds all three

8

RFA's sufficiently specific and overrules the objections. Defendants must provide amended answers to RFA Nos. 15-17.

**RFA No. 19 (a, c-e, f, g-h)**

RFA 19 concerns the 57 OM-1665-BDD that is the subject of this lawsuit. Subpart "a" states that the device had two sets of operator controls: one called lower controls and one called upper controls. Defendants admitted the request subject to an objection of "vague and ambiguous." The Court overrules the objection and deems the answer to be an unequivocal admission to RFA 19(a).

RFA19(c) states that the "upper control was a single stick metal handle." Defendant denied the RFA subject to an objection of "vague and ambiguous." Defendants further stated that there is more than one upper control lever and that the subject aerial lift does not have a part referred to as a "single stick metal handle." While Defendants should have provided this explanation in its initial response, the Court sustains the objection. Defendants need not respond further to RFA 19(c).

RFA 19(d) states that the "upper control had a metal cap covering mechanisms like pivotal shafts." Defendants objected on grounds that it was vague and ambiguous. Defendants failed to provide sufficient specificity. Which part of RFA 19(d), if any, is vague and ambiguous: "upper control", "metal cap", or "pivotal shafts" or all of the above? The objection is overruled, and Defendants are directed to provide an amended answer to RFA 19(d).

RFA 19(e) states: "It had a one two-person capacity bucket affixed to the boom." Defendant provided an objection: "vague and ambiguous." Defendants' opposition brief provides no assistance as to what part of RFA 19(e) is ambiguous. The objection is overruled and Defendants must provide an amended answer to RFA 19(e).

RFA 19(f) states "It used metal top screws to attach the coverings to the upper boom." Defendants objected: "vague and ambiguous as to term 'metal top screws', overly broad." Subject to the objection, Defendants denied RFA 19(f).  In the brief, Defendants state that the term "metal top screws," without further description or definition, could be interpreted to mean the screw Plaintiffs "are referring to is made of one material only the top is metal or it could be interpreted to mean that the entire screw, including the top is made of metal."  This explanation is unpersuasive. The request is sufficiently specific, and Defendants' objections are overruled.  The answer is deemed to be an unequivocal denial of RFA 19(f).

RFA 19(g) states: "It had a bucket liner that was insulated."  RFA 19(h) states that "It had a bucket liner that was isolated."  Defendants object to both subparts: "Overly broad, vague and ambiguous," and denied both RFA 19(g) and (h) subject to those objections.  In the brief, Defendants explain that the terms "insulated" and "isolated" are susceptible to more than one interpretation.  The Court finds the terms generally understandable and overrules the objections.  Defendants' answers to both RFA 19(g) and (h) are deemed unequivocal denials.

**RFA No. 20 (a-c)**

RFA 20 concerns warning labels.  Subpart "a" states that the July 7, 2005 letter (Ex. 4) enclosed true and correct copies of the warning decals that were affixed to the OM-57-1665-BDD. Subpart "b" states that the warning decals in this exhibit contained copies of all the warning decals that were affixed to the OM-57-1665-BDD.  Subpart "c" states that other than the warning decals attached as part of the July 7, 2005 letter, there were no other warning decals affixed to the OM-57-1665-BDD.  As to subparts "a" and "b", Defendants objected: "vague and ambiguous as to time

period."   As to subpart "c", Defendants made the same objection and further stated that after reasonable inquiry, it did not have sufficient information either to admit or deny the request.

In the opposition brief, Defendants state that it is unclear whether Plaintiffs were asking if warning decals were affixed when the aerial device left Terex's facility, when the accident occurred, or after the accident occurred.  The requests are sufficiently clear based on the subject matter of the lawsuit and allegations.  Defendants' objections are overruled and they must provide amended answers to all three subparts of RFA 20.

**RFA Nos. 22-24**

RFA 22 and 23 state that in 1995 and 1996, it was the policy of Simon-Telelect, Inc. to affix MADDDC warning labels and decals on its aerial devices, including the device in question.  RFA 24 states that "other than the warning labels and decals recommended by MADDDC, from 1993 through 1997, Simon Telelect, Inc. did not affix other warning labels or decals on the device in question. Defendants denied all three requests subject to an objection of "vague and ambiguous."  In the opposition brief, Defendants state that the term MADDDC warning labels and decals could be interpreted to have more than one meaning.  Yet, for one thing, Defendants did not supply the more specific objection in their initial responses.  In any event, the Court concludes that the requests are sufficiently specific, and that Defendants' answers are deemed unequivocal denials as to RFA Nos. 22, 23 and 24.

**RFA Nos. 25, 27, 29, 30, 31, 32, 33, 34, 35, 37, and 38**

These RFA's are grouped under the topic "Upper Hand Controls."  RFA 25 states that the upper hand controls on the device in question were made of metal components.  Defendants denied the request subject to an objection of "vague and ambiguous."  In the opposition brief, Defendants

states Plaintiffs have not specified the upper hand controls to which they refer and that it is unclear whether Plaintiffs are asking for an admission that the upper hand controls were made entirely of metal or of metal and other materials.

Plaintiffs state that "as Defendants are aware and as Exhibit 2 graphically demonstrates, there is only one metal upper control handle and the remaining controls are called levers." [Doc. 88, p. 4.] The Court did not locate a photograph marked Exhibit 2.[1]  There is a photograph marked Exhibit 5 (to Plaintiffs' brief), and while this photograph may clearly show the parties where the "levers" and "upper control handle" are, it is not obvious to the Court.  Therefore, the Court sustains the objections for the reasons stated and Defendant need not respond further to RFA 25.

RFA 27 states that the "upper hand control handle as shown in Exhibit 2 was the handle being used by Ervin Ward on July 16, 2003 while he was in the bucket" of the pertinent device.  Defendants stated that, after reasonable inquiry, they could neither admit nor deny the request.  Plaintiffs disagree with this objection, but if Defendants can neither admit nor deny the request, after reasonable inquiry, the Court sustains the objection.  Rule 26(e), however, imposes a duty on a party to supplement a denial or statement of inability to admit or deny if the party learns that the original response was in some way incomplete.  Thus, Defendants are under a continuing obligation to supplement any answers that it provides.

RFA Nos. 29, 30 and 31 ask whether the upper hand controls and handle of the device in question were "insulated controls", made of "conductive material," or not made of any type of conductively resistant material.  Defendants provided the same objection "vague and ambiguous" as

_____

[1]Plaintiffs refer to the Exhibit in the RFA's as Ex. 2, but explain in their motion that the photograph is Exhibit 5.  [Doc. 81, p. 9.]

to the three different phrases: "insulated controls," "conductive material", and "conductively resistant material."  Defendants state in the opposition brief that these terms lack clarity and are susceptible to more than one interpretation and "would require an essay to explain."  [Doc. 83, p. 11.] Defendants also state that Plaintiffs use the term "conductive material" without any indication of circumstances or surrounding environment.  Defendants further explain that whether something conducts electricity is dependent on a number of factors, including the condition and thickness of the material, whether it is connected to other items, the general external environment and voltages applied. [Doc. 83, p. 12.] Defendants cite deposition testimony of Mr. Hargreaves in which he stated that he thought "everything will conduct electricity depending on the voltage." [Doc. 83, p. 12; Ex. 2 to Doc. 81, p. 84-85.]

Plaintiffs argue in part that Defendants' objection to a term like "insulated" or "insulation" is puzzling.  Plaintiffs note that Defendants quoted portions of a deposition where Mr. Olson provided a "dictionary definition" of the term insulation.  It is true that Mr. Olson testified that "a dictionary definition of insulation is provides a high resistance to electric current."  [Doc. 83, ¶ 28, p. 13.] However, Mr. Olson testimony was not entirely clear as to what he is saying with respect to the aerial device in question.  For example, he testified that "we do not consider it insulated" but that it is an "insulating aerial device, yes."  Mr. Olson went on to state that the product met the requirements of ANSI 92.2 for an insulated aerial device.

Although it presents a close call, the Court sustains Defendants' objections to RFA Nos. 29, 30 and 31, and does not require Defendants to provide amended answers.

RFA 32 asks if the upper hand controls and particularly the handle of the device in question "was not made of fiberglass, plastic, nylatron, polyurethane, UHMW (Ultra high molecular weight

13

polyethylene), glass filled nylon or other non-conductive material."  RFA 33 asks if the same "could have been made" of these materials.  RFA's 34-38 each state that each of the materials (fiberglass, nylatron, polyurethane, glass filled nylon and UHMW) is a non-conductive material or conductively resistant material.  Defendants denied Nos. 32 and 33, subject to its objections of vague and ambiguous.  Defendants objected to Nos. 34-38 on grounds that they were vague and ambiguous.

In the opposition brief, Defendants state that the term "conductively resistant material" was never used in depositions, and further that many factors affect whether something conducts electricity.  [Doc. 83, ¶ 25.]  For example, the amount of voltage applied may cause non-conductive material to conduct electricity.  The Court finds that Defendants' objections are well taken and that Defendants need not provide additional answers to RFP Nos. 32-38.

### RFA Nos. 39, 40, 41, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53

All of these RFA's are grouped under the category "Testing."  RFA 39 states: "Prior to putting the pertinent device on the market, neither Simon-Telelect, Inc. nor Terex-Telelect, Inc. tested the electrical conductivity of the metal handle shown in Exhibit 2."  RFA 40 is the same but refers to testing of the electrical conductivity of the metal cap behind the metal handle.  RFA 41 states that neither company conducted or performed any human factors testing in connection with the device in question prior to putting it on the market.

In response to RFA Nos. 39-40, Defendants objected that the requests were vague and ambiguous.  Subject to these objections, Defendant Simon-Telelect, Inc., after reasonable inquiry, could neither admit nor deny the requests, but Terex-Telelect admitted that there was no requirement to perform such tests.  Defendants explain in the opposition brief that Simon-Telelect, Inc. is no longer in existence and has not been in existence for almost 10 years.  Terex asked its employees who

14

might have had knowledge or information about Simon-Telelect, Inc. but the employees lacked sufficient knowledge to admit or deny the requests.

RFA 41 states that neither Defendant conducted or performed any "human factors testing" in connection with the aerial device before putting it on the market. Defendants objected that the phrase "human factors testing" was vague and ambiguous. Subject to the objection, Defendants states that it had made reasonable inquiry but could not answer on behalf of Simon-Telelect, Inc.; Terex-Telelect, Inc., however, denied the request as applied to it.

Based on these explanations, Defendants' answers with respect to questions directed at Simon-Telelect, Inc. are sustained and Defendants need not further respond to RFA's 39-41.

RFA 43 states that neither Defendant tested other human factors aspects in connection with the operators working in the bucket. RFA 44 states that neither Defendant tested the human factors aspects of using the single stick control handle in the upper control as shown on Exhibit 2. Defendants objected on grounds that the terms "tested" and "human factors aspects" were vague and ambiguous. Defendants state that during Mr. Olson's deposition, he was asked whether Defendants conducted any "human factors testing," and that Mr. Olson asked what was meant by a human factors test. [Doc. 81, Ex. 3, p. 169.]

Plaintiffs argue that both Mr. Olson and Mr. Hargreaves testified as to their experience with and/or expertise in human factors. [Doc. 81, p. 5.] However, in reviewing the cited deposition transcripts, it is not clear to the Court what experience the two men have or what "human factors testing" is. Mr. Olson testified that he had "experience in human factors and how the equipment they use is operated," but went on to state he had not taken a course in human factors, had no formal education in the area and had never testified as an expert in the field. [Doc. 81, Ex. 3, pp. 91-92.]

15

Mr. Hargreaves testified that he had not done any actual course work in human factors engineering but that it was "somewhat of a life-long experience." He testified further that he had been qualified and accepted as an expert in "human factors" with respect to cranes. [Doc. 81, Ex. 2, pp. 72, 122-23.] None of the cited deposition transcript actually defines what "human factors testing" is or what could have been done with respect to the device in question.

The Court agrees that the phrases as used, are vague and ambiguous. Therefore, Defendants' objections are sustained, and Defendants need not provide further answers to RFA's 43 and 44.

RFA 45 states that prior to selling the device in question to the City of Farmington, Defendants only tested it to ensure it complied with the ANSI standards. Terex-Telelect, Inc. denied, but after reasonable inquiry, the request could neither be admitted nor denied with respect to Simon-Telelect, Inc. The Court sustains the objection for the reasons stated above. Thus, Defendants need not provide any additional answer to RFA 45.

RFA Nos. 46 and 47 state that the ANSI standards in effect then did not have any requirement as to the type of material to be used in the upper control handle or in the lower control handle of the device in question. Defendants objected on grounds of "vague and ambiguous." Subject to the objections, they admitted both RFA's. In the opposition brief, Defendants state that the RFA's lack specificity with regard to time or fail to specify a time period. Additionally, Plaintiffs failed to refer to particular ANSI standards. The Court finds that the RFA's are sufficiently specific as to time and meaning and deems both RFA's to have been unequivocally admitted.

RFA Nos. 48 and 49 state that from December 1, 1993 through January 31, 2003, neither Defendant studied the feasibility of or considered putting a plastic handle in the upper control rather than the metal handle. Defendants objected that the terms "plastic handle" and "metal handle" were

16

vague and ambiguous.  Subject to the objections, Terex-Telelect, Inc. denied both requests as to it.
After inquiry, neither RFA could be admitted nor denied with respect to Simon-Telelect, Inc.

The Court sustains the objections as they concern Simon-Telelect, Inc. for the reasons stated
above.  The Court concludes that Terex-Telelect did provide the answers it could, after reasonable
inquiry, on behalf of Simon-Telelect, Inc.  In the brief, Defendants explained that they spoke to
employees who might have knowledge about Simon-Telelect, Inc. and reviewed its records and
documents pertaining to Simon-Telelect, Inc.  This is sufficient.

RFA Nos. 50 and 51 also relate to alleged testing by Telelect Engineering Department.
Defendants, after reasonable inquiry, were unable to admit or deny the request.  The answer is
sustained, and no additional information need be supplied, unless new or additional information
warrants supplementation under Rule 26(e).

RFA 52 states that between September 23, 1988 and July 6, 2003, neither Defendant tested
any potentially non-conductive material or conductively resistant material for use in the upper control
handle of the device in question.  RFA 53 states that the first test conducted by Terex-Telelect, Inc.
on a non-conductive material or conductively resistant material for use in the upper control was done
on July 7, 2003 at PowerTech in Canada.  Defendants objected to the terms "tested", "potentially
non-conductive material," and "conductively resistant material" on grounds of vagueness and
ambiguity.  Subject to the objections, Defendant denied the requests.

The Court overrules the objections and deems Defendants' denials of RFA Nos. 52 and 53
to be unequivocal.

**RFA Nos. 54, 55, 56, 59, 60, 65-68, and 70(a-i)**

These RFA's all are grouped under "July 16, 2003" and concern the shock allegedly suffered by Plaintiff Ervin Ward on July 16, 2003. All of these RFA's use the word "shocked" in reference to the incident. Defendants object to each request on grounds that the term "shocked" is vague and ambiguous. In response to some of the RFA's, subject to the objection, Defendants then deny the requests. In the case of RFA 54, Defendants state that they lack sufficient information, after reasonable inquiry, to admit or deny the request. In response to a number of the RFA's they state only the objection and provide no further answer.

In their brief, Defendants state that the term "shocked" can mean that someone was met with surprise, horror, or disgust, caused to undergo physical or nervous shock, or subjected to the action of an electrical discharge. The term "shocked" (meaning electrical shock) is clear in the context of this lawsuit. The Court overrules all of these objections and deems Defendants' denials of RFA Nos. 55-56 and 59-60 to be unequivocal. The Court requires Defendants to provide an amended answer to RFA No. 54 and to all other RFA's under this section in which they provided nothing more than an objection.

RFA 65 states that when Mr. Ward was shocked on July 16, 2003, he was holding a de-energized line in one hand and touched the upper hand control shown in Ex. 2 with the other hand. RFA 66 states that the upper part of the boom on the device in question came in contact with an energized line at the time of the electrical shock to Ward. Defendants object to the terms "shocked" and to "upper part of the boom." Subject to the objections and after reasonable inquiry, Defendants state they can neither admit nor deny the two requests. As stated before, the Court overrules all objections that the term "shocked" is vague or ambiguous, with respect to the circumstances of this

case.  However, Defendants state that they have made reasonable inquiry and are unable to admit or deny the requests.  Thus, Defendants need not provide additional responses to RFA Nos. 65 and 66.

RFA 67 states that when Ward was shocked on July 16, 2005 [sic], an energized line came in contact with a metal screw that secured the covering on the upper part of the boom.  Defendants objected to the term "shocked" as vague and ambiguous but did not object to the phrase "upper part of the boom" this time.  Subject to the objection, Defendants denied the request.  The objection is overruled, and Defendants' denial is deemed unequivocal.

RFA 68 states that at the time of the incident, the electric current followed a path that proceeded from the metal screw to the upper control to Ward's hands and arms.  Defendants denied the request subject only to the objection that the term "shocked" was vague and ambiguous.  For the reasons stated above, the Court overrules the objection and deems the denial to be unequivocal.

RFA 70 discusses more specifics regarding the July 16, 2003 incident and the shock allegedly suffered by Ward.  For example, some of the subparts state that the upper part of the boom was not insulated, that it was not isolated, that metal-top screws were used to secure or fasten the covering to the upper part of the boom, the metal-top screws were not insulated and were not isolated, the metal-top screws were conductors of electricity, the metal-top screws were not conductively resistant, the upper control handle is a conductor of electricity, and the upper control handle was not conductively resistant.  RFA 70(a-i).

Defendants objected to all of the subparts of RFA 70 on grounds that certain terms were vague and ambiguous, e.g., "shocked", "upper part of the boom," "insulated," "isolated, "covering to the upper part of the boom," "conductors," "conductively resistant," "conductor of electricity," etc.  The Court overrules all of the objections either because they lack sufficient specificity or based

on the Court analysis *supra*.  Therefore, Defendants must provide amended answers to all of RFA 70(a-i).

**RFA No. 71(b-h, j, l-m, p-u)**

These RFA's are grouped under the heading "MADDDC."  Subpart "b" states that in the mid-to-late 1970's one of the committees of MADDDC was the Technical and Engineering Committee. Defendants admitted "b" subject to an objection of "vague and ambiguous."  Defendants failed to specify what part of "b" was vague or ambiguous.  In their opposition brief, Defendants state, *inter alia*, that Plaintiffs failed to specify particular times or dates and used terms that are susceptible to multiple meanings.  Defendants' explanation for why the RFA subparts might be vague and ambiguous come too late, and in any event, are unpersuasive.  The objection is overruled, and Defendants' admission is deemed unequivocal.

With respect to subparts "c" and "d", Defendants either deny or admit, again subject to an unspecified objection of "vague and ambiguous."  The objections are overruled, and Defendants' responses are deemed unequivocal admissions or denials.

Subparts "e" states that in the mid-to-late 1970's, MADDDC worked with ANSI to develop manufacturing standards for Aerial Devices and Drigger Derricks.  Subpart "f" states that in the early 1990's, Jim Bassingthwaite was chairman of the Technical and Engineering Committee of MADDDC. Subject to the objections of vague and ambiguous, Defendants state, after reasonable inquiry, they are unable to admit or deny the requests.

It is unclear to the Court whether Defendants are unable to admit or deny these requests because of the purported ambiguity or vagueness of time periods or definitions of phrases.  The Court

overrules the objections, and directs Defendants to provide supplemental answers to both subparts "e" and "f".

Subparts "g" and "h" and "j" concern Mr. Bassingthwaite's employment by Simon-Telelect, Inc. Defendants admit these three subparts, subject to an unspecified objection of "vague and ambiguous." The Court overrules the objections and deems the admissions to be unequivocal.

Subparts "l" and "m" concern Mr. Bassingthwaite's attendance of MADDDC meetings during some part of 1993 or earlier and "through at least 1997." Defendants admit "l", subject to an objection of "vague and ambiguous." They again make the same objection to "m" but state they have made reasonable inquiry and are unable to admit or deny. Defendants' objections are overruled. Their admission to subpart "l" is deemed unequivocal. To the extent, that Defendants contend they were unable to answer the RFA because of insufficiently specific time periods or allegedly vague phrases like "meeting attendance," Defendants must provide a supplemental answer to RFA(m).

Subpart "p" states that "at some time and before Hi-Ranger, Inc. acquired Mobile Aerial Towers, was a member of MADDDC." Defendants objected on grounds that the request is vague and ambiguous. The Court agrees because it cannot understand the request, as worded. The objection is sustained.

Subparts "q" and "r" state that Hi-Ranger, Inc. and James A. Olson were members of MADDDC. Defendants admitted the requests subject to an objection of "vague and ambiguous." In Defendants' brief, they argue unpersuasively that Plaintiffs have not defined the term "member." Is a member someone who attends meetings regularly, someone who pays dues to MADDDC, or someone who participates in the activities and businesses of MADDDC. [Doc. 83, pp. 9-10.] The Court overrules the objections and deems the admissions to be unequivocal.

Subpart "s" states that at some time and before Telelect, Inc. was acquired by Simon-Telelect, Inc., Telelect, Inc. was a member of MADDDC. Subject to the usual objection, Defendants state, after reasonable inquiry, they are unable to admit or deny the request. The Court overrules the objections and requires Defendants to provide a supplemental answer to RFA 71(s), to the extent Defendants were unable to answer based on their objection.

Defendants denied subparts "t" and "u" of RFA 71, subject to the objection that the requests were "vague and ambiguous." The Court again overrules the objections and deems the denials to be unequivocal.

**RFA No. 73( c, f, n, x-cc, kk)**

These RFA subparts are grouped under the category "James A. Olson." Subpart "c" states that Mr. Olson worked for Simon-Telelect from 1993 until approximately 1997, when Simon Telelect, Inc. was purchased by Terex-Telelect, Inc. Defendants denied the request subject to an objection of "vague and ambiguous." In their brief, Defendants state that "c" is based on "an inaccurate statement of fact that interferes with the meaning of the request as a whole." [Doc. 83, p. 10.] The Court does not understand the explanation of the objection and is unpersuaded. The objection is overruled, and the denial is deemed unequivocal.

Subpart "f" states that when Mr. Olson met Doug Schrader, Mr. Schrader was in the quality control department of Simon-Telelect of Telelect, Inc. Subject to their usual objection, Defendants deny the request. In their brief, they state that the "quality control department of Simon-Telelect of Telelect, Inc. is an unknown entity or department since Telelect, Inc. was not a subsidiary of Simon-Telelect." If it were an unknown entity or department, it seems that Defendants would have

responded that they did not have the information either to admit or deny the request. Instead, they denied it. Thus, the Court overrules the objection and deems the denial to be unequivocal.

Subpart "n" states that Olson has not received formal education in the field of Human Factors. Defendants admitted the request, subject to an objection of "vague and ambiguous." It seems that this was Olson's deposition testimony. The objection is overruled, and the admission is deemed unequivocal.

Subpart "x" states that Olson knew after he went to work for Simon-Telelect, Inc. that in 1987 Schrader had "previously conductively" tested a nylatron handle. Defendants object to the phrase "previously conductively" and object on grounds that the time period is vague and ambiguous. Subject to the objections, Defendants admitted that Olson knew after his employment with Terex-Telelect, Inc. that Schrader had conducted some tests on a Nylatron handle. The Court overrules the objections and deems Defendants' admission to be unequivocal to RFA 73(x).

Subparts "y", "z", and "aa" all use the phrase "previously conductively tested" to which Defendants object. The Court overrules the objections and requires Defendants to provide amended answers to RFA 73(y, z and aa).

Subparts "bb" and "cc" state that Olson knew that plastic is a non-conductive material and that he knew plastic is a conductively resistant material. Defendants denied both requests, subject to the objection "vague and ambiguous" regarding the phrases "non-conductive material" and "conductively resistant material." The Court overrules the objections and deems the denials to be unequivocal to RFA 73(bb and cc).

Subpart "kk" states that Olson knew that the plastic handles sold to the City of Seattle were used to operate the single stick upper control handle. Defendants provided the objection of "vague

and ambiguous." In their brief, they state further that the request is vague and ambiguous as to time and meaning. In previous related subparts, Defendants were able to admit or deny requests concerning plastic handles sold to the city of Seattle. Thus, the Court overrules the objections and requires Defendants to supply an amended answer to RFA 73(kk).

**RFA No. 76 (b, c i-iv)**

This RFA and subparts is grouped under the heading "Competitors." RFA 76(b) states that Altec (a competitor of Terex-Telelect, Inc.) and Terex-Telelect, Inc. are the two largest and biggest manufacturers of aerial devices. Defendants provided the objection of "vague and ambiguous." In their brief, Defendants state they are confused by the terms "largest and biggest". Do they mean production numbers, revenue, biggest factory or plant, number of employees? The Court is unpersuaded and concludes that the terms have easily understood meanings. Thus, the Court overrules the objections and requires Defendants to supply amended answers.

Subpart "c" and sub-subparts i-iv of "c" provide that other competitors are Versalift, Televar, Condor Bronto, and ERI or Elliott. Defendants admit or deny all four of the subparts, subject to an objection of "vague and ambiguous." In their brief, they state that there is no explanation as to who or what the request refers. Yet, it is clear in the context of the request that these are purported competitors of Defendants. Thus, the objections are overruled and the admissions and denials are deemed unequivocal as to RFA 76c i-iv.

**RFA Nos. 97, 98, 99**

These RFA's are categorized under "Campaign Bulletins, Advisories, etc." RFA 97 states that a Campaign Bulletin is sent out to the field by Simon-Telelect, Inc. or Terex-Telelect, Inc. or Terex Corporation to alert people to information regarding specific machines. RFA 98 discusses a

"product advisory" that is posted on the internet for anyone to look at.  RFA 99 states that a "service bulletin" is sent by Simon-Telelect, Inc., or Terex-Telelect, Inc. or Terex Corp. to inform dealers and service people of service issues.  Defendants objected to all three RFA's on the ground that they were overly broad.  Subject to the objections, Defendants admitted all three RFA's as to Terex-Telelect, Inc. but denied them as to Simon-Telelect, Inc.  In their brief, Defendants state that they are overly broad because they request information regarding an entity that is not a party to this lawsuit, Terex Corp.  The objections are sustained as to Terex Corporation.

### RFA No. 107 (a-s)

These requests are grouped under the heading "Prior Lawsuits and Accidents".  Subparts "a" through "s" generally list lawsuits or accidents by month and year, or just year, case number, names of parties,  and courts.  They sometimes briefly describe the type of accident or type of lawsuit. Defendants set out the same objection to all subparts:  "overly broad, vague and ambiguous."  Subject to those objections, Defendants admit a, b, c, d, e, f, h, j, m, o, p, q, r, and s.  They state, after reasonable inquiry, they are unable to admit or deny RFA subparts g, i, k, l, n.  In their brief, Defendants argue that the objections to all of 107 (a-s) should be sustained because "they request information regarding lawsuits filed against entities that are not parties in this case, that no longer exist, and are not represented in this case."  [Doc. 83, pp. 10-11.]

The lawsuit in subpart "g" was filed against "Telelect, Inc., n/k/a Simon-Telelect, Inc.  The lawsuit in subpart "i" was filed against Simon-Telelect, Inc., et al..  The lawsuit in subpart "k" was filed against Teche Electric Cooperative, Inc.  The lawsuit in subpart "l" was filed against Simon-Telelect Inc. et al.  The lawsuit in subpart "n" was filed against Simon-Telelect, Inc.  The Court

sustains the objection with respect to 107(k), but requires Defendants to make additional reasonable inquiry to determine whether the other lawsuits were filed as alleged, RFA 107 (g, i, l, n).

**RFA Nos. 108 (a, b), 109 (a, b)**

These requests are grouped under the heading "Documents."  RFA 108 states that on December 30, 1987, Schrader sent a memo to Jim Bassingthwaite regarding the Nylatron stick handle and that a copy of the memo was sent to Larry Kotval.  A copy of this memo was attached to the RFA's as Exhibit 3 and Plaintiffs seek an admission or denial as to the truth and accuracy of the attached copy, and to the authenticity of the document under Fed. R. Evid. 901.

RFA 109 is similar in that it discusses a September 22, 1988 memo from Schrader to Bassingthwaite.  Plaintiffs ask if the copy of this memo is a true and accurate copy of the original and whether it is authentic under Fed. R. Evid. 901.

Defendants state they made reasonable inquiry as to both RFA Nos. 108(a, b) and 109 (a, b), but lack sufficient information to admit or deny the requests concerning these memos.  In their opposition brief, Defendant explain that the memos referred to "testing" allegedly performed by Schrader, who was an employee of Telelect, Inc.  Telelect, Inc. sold its "product line" to Simon-Telelect at some time in 1988.  But, Telelect, Inc. is not a party to this lawsuit and is not a part of Terex.  Thus, Terex asserts it has no way to authenticate the memos because it does not have these memos in their files or records, nor is it a custodian of records for Telelect, Inc.  Defendants further state that they did not exist when the memos were created and that no one at Terex has personal knowledge of the subject matter contained in the memos.

Based on these explanations, the Court determines that Defendants' answers to RFA Nos.108 (a, b) and 109 (a, b) are sufficient and that no supplementation is needed, unless Defendants are provided with additional information sufficient to require supplementation under Rule 26(e).

## Conclusion

As set out above, the Plaintiffs' motion to determine sufficiency is granted in part and denied in part.   To the extent that the Court required Defendants to provide supplemental or amended answers to Plaintiffs, those answers must be served no later than fifteen (15) days after entry of this Order.  The Court declines to assess fees or sanctions.  The parties bear their own fees and expenses incurred in briefing this motion.

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Determine the Sufficiency of Defendants' Objections and Responses to Plaintiffs' First Requests for Admissions [Doc. 81] is GRANTED in part, and DENIED in part, as described herein.  All amended answers must be served on Plaintiffs within 15 days after entry of this Order.  No fees are sanctions are assessed.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
Chief United States Magistrate Judge